Thank you, Your Honor. My name is David Ness with the Federal Defenders of Montana, appearing for the petition of Bryce Peterson. The certified question in this case is whether an appellate court's remand to correct restitution creates a new judgment for purposes of determining the statute of limitations under 28 United States Code section 2244. We maintain, of course, that this court should answer that question affirmatively. Such a holding would have at least three benefits. First, it's consistent with this court's case law. Second, it would avoid a circuit split. And third, and maybe even most importantly, it creates an easy-to-follow rule that would also come with the benefit that it would avoid simultaneous proceedings ongoing in the state court or piecemeal litigation. In determining otherwise, the district court found some unpublished district court cases that seemed to suggest that merely remanding for restitution would not create a new judgment. But I believe that those district court cases are inconsistent with this court's decisions in Colvin and Gilbert. In Colvin, of course, what happened was that the defendant was convicted a number of drug crimes. It was reversed. His convictions were reversed, or at least just one conviction was reversed. It was returned with instructions to vacate that conviction and to decrease his special assessment. And that's all that happened. Counsel, can I ask you a question? Sure. Do we have to answer that question? Even if we assume that the amended judgment in the state court creates a new judgment, restarts the clock, don't you still have a problem with timeliness? Don't you have to show equitable tolling? That is correct. And that's why even though the court didn't grant a certificate of appealability on the equitable tolling issue, we did raise it as an uncertified issue. And we maintained that Mr. Peterson should be entitled to equitable tolling. Why? Because he relied on the state post-conviction court's decision that in fact his post-conviction petition was timely filed. He filed his post-conviction petition believing it to be timely. The Montana Supreme Court, to my knowledge, has never held that a post-conviction proceeding must run simultaneously with proceeding withdrawal. If you go back, though, isn't this sort of... He made some tactical decisions here that got him into this position. Isn't that correct? If what you're referring to as a tactical decision being that he dismissed his appeal and decided then to pursue, rather than direct appeal, to go back to the trial court and try to withdraw his Alfred pleas, then yes, I guess that would be a tactical decision. I don't think that there was anything he could have raised on direct appeal because essentially the issues he had to raise to withdraw his pleas were outside of the record. So he had to go back down to the trial court to try to do that. So he went back down to the trial court, moved to withdraw his guilty pleas. The trial court denied his request. He went up to the Montana Supreme Court. The Montana Supreme Court affirmed. He then, he believed within a year of that, timely filed his petition for post-conviction relief. In the state trial court? In the state trial court, correct, which he litigated. And the state, of course, moved to dismiss his post-conviction petition, arguing that it was untimely. The trial court judge in his decision, although it ultimately denied post-conviction relief, it also denied the state's request that his petition be dismissed as untimely, stating they found its argument confusing. So Mr. Peterson, the whole time he was in good faith proceeding during the post-conviction proceedings, believed his post-conviction petition was properly filed and therefore tolling the statute, the 2244. Let me ask you, could he have filed a protective petition in the federal court and then asked for a stay and obey pending resolution of all these state proceedings? I suppose he could have, but ultimately he did, to try to preserve his claim seven, which is the judicial bias claim. But I don't think he had any inkling whatsoever that that would even be necessary. As I say, there had never been a decision out there saying that these two proceedings should run simultaneously by the Montana Supreme Court. And with no indication from the trial court that his petition was untimely, he had no reason to believe that he should file a protective petition. So he's proceeding under the assumption that his petition is timely. I think he was led to believe that by the trial court that agreed with him that his petition was timely. And then he got up to the Montana Supreme Court and all of a sudden found out differently. So he, throughout all of this, he exercised, I think, pretty much maximum diligence. He was doing everything that he thought he should do. So, well, I don't, you know, I'm not, I might, if I were to just look at diligence, I might well agree with you. But my concern is, is on the other prong, which was who, who prevented him from filing a federal habeas petition? Well, that I would say would be the ruling of the state post-conviction court, the trial court that was hearing his post-conviction petition. Because, because throughout the years, really, that was being litigated. He, he fully and honestly and legitimately believed that his petition had been properly filed and that the federal statute of limitations was thereby told. Who raised the question that his petition may not have been timely filed? Well, the state did. The state raised that question. And the state raised that question in the trial court, but the trial court rejected it, as I said, found their argument confusing. And I think his fair state gave it fairly short shrift. So I have one last question in this area, and that is, what's your, which cases would you say we should rely on to say that he's entitled to equitable tolling? Well, the cases I cited, I cited the Buckles case, I think the Sosa case. Also, it's a little bit different facts and that the magistrate there granted, granted extensions. The Rudin case as well, where the court granted Ms. Rudin additional, additional time, finding that there was some extraordinary circumstances. Why his petition was not timely filed or, or, and allowed his, allowed him to file a late, late post-conviction petition. And therefore, Ms. Rudin was misled as well. So I think that, that Mr. Peterson's situation is fairly similar to both Rudin and Sosa. And Buckles also involved court personnel that misled, misled the petitioner in that case. So if there's no further questions, I'll save the rest of my time for rebuttal. Thank you. Go ahead. Good morning. May it please the court. Brad Feldheim. I'm an assistant attorney general with the state of Montana. And I will move straight to equitable tolling. I can certainly address the other issues, but it sounds like that's something that I should probably address up front. And from a timeline standpoint, I think that it's important to understand that Mr. Peterson filed his petition two years late. And that's true, whether we base this off the original judgment date or the amended judgment date. So as he concedes, as you, as you have all pointed out, equitable tolling must apply for him to prevail here. And it does not because there are no extraordinary circumstances that caused the untimely filing. Now, equitable tolling requires that the extraordinary circumstance causes the untimely filing. In his opening brief, the only extraordinary circumstance that he alleges is this district court order that Mr. Ness is referring to. Dates are important here. That district court order was filed on December 3rd, 2015. If this court were to adopt the amended judgment date for the statute of limitations, that was nine months after the statute of limitations expired. Well, there's no way that it caused the untimely filing. I would also argue that it isn't necessarily extraordinary for a district court to do something that's later overturned by an appellate court. But ultimately, the timing is really the issue here. And there's no way for that to cause that untimely filing. And essentially what he's asking for is for this court to resurrect a previously expired statute of limitations, which is not the purpose of equitable tolling. Now, because that's the only ground he raises in his opening brief, he provides two different dates in his reply brief. One is the petition date, and that's important to him because he needs it to work back, all the work to clock back all the way to the date of the petition. For the petition to be timely. The second date is the date two days after the petition was filed. And what he says there is there's an order from the state district court that orders the state to respond, and that somehow supports his misunderstanding of the law. To apply the elements of equitable tolling, it's not extraordinary for a state court in post-conviction, or a federal court for that matter in post-conviction, to order the state or the government to respond, notwithstanding their ability or authority to dismiss a petition on the merits or on statute of limitations ground. Particularly in a case like this where Peterson filed a 300-page petition, and two days later the court orders the state to respond. I think that ultimately, notwithstanding the district court's authority to go to the statute of limitations on the merits, it's not an extraordinary circumstance that caused the untimely filing. And frankly, it's completely unrelated to the statute of limitations. There's nothing specific in there other than ordering the state to respond. And the second date goes back to the date of the petition, and essentially the argument that he's making is he was confused by the state of the law. But number one, that's not extraordinary circumstances. And number two, the law was not unclear. You make the Montana Supreme Court's opinion out as if it's some sort of revolutionary opinion. It was not. It's literally interpreting the plain language of the two statutes that apply here, and to quote their opinion, to allow a defendant to extend the post-conviction petition deadline by first filing a motion to withdraw a guilty plea, would contravene the plain language of sections 46-16-1052 and 46-21-1021. And those are the two statutes that Peterson availed himself of for post-conviction relief. And ultimately, both of them plainly state in their language that there's a one-year statute of limitations on those claims. And that's what the Montana Supreme Court says. This isn't a revolutionary opinion. Frankly, it's quite simple. You should take a look at it and kind of try to compare it to the argument that he's trying to make, because there is no basis for statutory tolling in the plain language of the statutes. There's a clear one-year time limit, and that's what the Montana Supreme Court says. So the state-of-the-law objection essentially is not something that is supported by either statute or the Montana Supreme Court's opinions. Really what this is is an attempt to subvert the general rule of the statute of limitations, and that's not the purpose of equitable tolling. The statute of limitations is the rule. Equitable tolling is an exception. And if you apply it the way that Peterson is requesting, the exception would essentially swallow the rule. Ultimately, I think the dates are also important because the Montana Supreme Court found that this petition was untimely. And under Pace v. DiGuglielmo, that's the end of the matter. It was untimely. He's not entitled to statutory tolling. And so if he was to try to use the state-of-the-law or reasonable confusion of the law, every defendant or every petitioner could come in here and say, well, I didn't understand the statute of limitations, therefore I'm entitled to equitable tolling. That's not the purpose of equitable tolling, and none of the circumstances that he alleged are extraordinary. Could you address the timeliness of the last claim that we asked for supplemental briefing? Sure. So essentially what he's trying to do is avail himself of the later trigger date in 2244 D1D. And our argument is essentially that he hasn't provided a factual predicate for that claim. He hasn't provided the vital facts necessary to support the claim. And the reason of that, and this is essentially, as I read it, a pleading requirement. And what he has done is attach sworn testimony from both the district court judge and the victim that deny the predicate of his claim. Was he, when he did that, was he acting pro se? Yes. Well, so when he filed his, he first raised his claim in a state habeas. He was pro se. So what you're saying is because he sent additional information that contradicted what he was trying to say in the affidavit that it's a wash, it doesn't count. Well, I think that, yeah, if you include sworn testimony that undermines the predicate of the claim, then I think that you failed to provide a factual predicate to support the claim. How does it undermine it? It just shows that there's a conflict. Well, the only the only information that he provides to support the claim are hearsay affidavits. Two of them specifically that address how, how, how, how, how else would a pro se petitioner make that claim? He would have in this particular case, I think that he could certainly have provided someone who had personal knowledge of the allegations that he's making. When he provides sworn testimony from the two people that are the only two people that are involved that denied it, then I think he needs. So what you're having, what you what you're saying is he'd have to get an affidavit from the judge or Miss Portman. I forget how to say her name. Yeah, partner. You'd have to get a they're the only two that would have knowledge of that. Yeah. Or someone who witnessed this. I mean, I think that when once you know that it's an allegation of sexual activity and you need a witness who saw it. Otherwise, the claim could not be raised based on hearsay. Correct. When you have sworn testimony from both the people who are accused and based upon what he's provided, the only two people who have personal knowledge of the the predicate for his claims. I think that the hearsay affidavits from and it's important to note, too, that these are these are just this is a husband and wife who say that the victim told them this in 2009. So you have sworn testimony from the judge that goes unimpeached. You have sworn testimony from the victim that denies the allegations in the in the hearsay affidavits. So I think that you have to be able to provide something, some sort of factual basis to to undermine the sworn testimony that he also was. Was it was there ever an evidentiary hearing on this at the state level or the and I know there wasn't at the federal level. Right. Yeah. There was no evidentiary hearing. What he did was he raised this in a state habeas petition and the Montana Supreme Court order. They dismissed that petition and said, you failed to meet your burden here to show that your incarceration is unconstitutional. And they cited to the facts in this case are quite complicated. And they they cited to a news report regarding this campaign, this contentious judicial campaign involving the trial judge and another attorney in Montana. And ultimately noted. That similar accusations surfaced in the local media during the recent race for district court judge in Ravalli County. And Peterson is only repeating these stories. And and ultimately, he didn't get an evidentiary hearing. But I think it goes to further undermine what he's saying. And I reference this, of course, in footnotes. But what they what what what undermines what the Supreme Court said? Yeah. And ultimately, the state proceedings regarding this, the campaign itself and the false advertisements that this attorney was running against the judge included these same allegations. And this attorney was later disbarred for relying on false or recklessly disregarding the truth as to the statements that are that are being made here and relied on by Peterson to support his claim. And so I think that within the context that matters, it matters because you've got sworn testimony from the district court judge that's unimpeached and you've got a sworn testimony from the victim. And ultimately, this has already been determined in another matter. And it is is not necessarily binding here. But it certainly informs whether or not this is the predicate of his claim is is based on fact. Well, it certainly would be true if there had been an evidentiary hearing. I would agree. At this juncture, counsel, are we trying to determine whether or not a COA should be granted to pursue this claim further? Well, the district court didn't grant a COA, so I suppose this court we could. Yes, that's right. At this point, that's what we are considering, whether or not a COA should be granted to pursue this claim further. What's your position on that? Well, I don't think that it should be encouraged to proceed further because of the information that he provides in in his petition and the sworn testimony from both and including the district court judge. Mind you, that that is unimpeached. And I think that that's important. I don't think that we should encourage petitioners to to forward. Sorry to forward claims based upon information that has been discredited. What was the basis on which the district court addressed or dealt with this particular claim? So is there no timeliness? Yeah. Yeah. So it was confusing. And ultimately, the reason that the district court dealt with it the way that he did was because this was not raised in the objections. This was raised for the first time on appeal. So the district court didn't address this head on. What the district court did was interpret Peterson's objections, essentially, because in his response to the state's objections, what he said was, essentially, I also have actual innocence claims and a judicial bias claim that may impact the analysis. And I'll address that further in my objections. He never addressed it further. So the district court looked at the objections and said, well, because you didn't specify this, I'm going to address it as actual innocence. You're going to interpret your judicial bias claim as actual innocence and essentially said that actual innocence exception does not apply here. So your judicial bias claim is is is not. I thought that was a little odd, a different way of approaching it. I mean, you should have just treated it as a judicial bias claim. Yeah. And I think that what he was doing was because 2244 D1D hadn't been raised, the district court felt like, OK, well, 2244 D1A applies and it's untimely under that statute. So out of a bunch of caution, I'm going to I'm going to look to actual innocence, which can operate as an extension to the statute of limitations. And just to tighten it up. But when you look at his actual innocence, a really tough standard. It is. He's he's needs to meet a, as you said, or I forget who said it, essentially a pleading standard. Maybe it was Judge Antuneau who referred to it as a pleading standard. Well, I think I did. I did as well. But but ultimately, yeah, I think that the actual innocence standard is a high bar. And I think ultimately what the district court is saying is I just want to be careful here. If he's saying actual innocence, I better address it just in case. But again, he didn't address the judicial bias claim under 1D because it hadn't been raised under 1D. OK. Let's see if there are any other questions. Thank you, counsel. We'll hear a rebuttal from petitioner. Thank you. Mr. Ness, you're muted. OK. First off, if this court were to determine that the statute of limitations began to run at the time of the amended judgment, Mr. Peterson's post conviction petition would have been timely. The amended judgment was filed on February 28th of 2014. He filed his post conviction petition roughly 10 months later on December 17th, 2014. So so his his post conviction petition was not untimely filed when it was filed. If the court again, if the court were to determine the clock began to run at the time of the amended judgment. So. Counsel, are you saying that the state filing was timely? Is that your point? Well, it would have been timely under the state statute, which has one year as well. But so it it it and it was filed within one year, which is the statute of limitations for both the state and the fed and the federal petition. Now, ultimately, the, you know, the Montana Supreme Court's decision, I guess, determined it made this ruling that I would disagree with something that was very obvious and ruled this petition was untimely. It wasn't. I would argue that it wasn't particularly obvious, primarily because the trial court judge didn't find it that way. We bound by the state court determination whether a state court filing is timely. You are you are bound by that, but but then that's what gets us into our equitable tolling argument. So and so that's why I have to have that equitable tolling argument, but it's not as if you could say that his petition was was nine months too late. As my colleague says, it wouldn't have been nine months late if if, in fact, the statute of limitations runs from the time of the amended judgment. So so if the petition run, if if the statute runs from the time of the amended judgment, his state post conviction petition would have been filed within the federal statute of limitations. So what's your what's your basis for equitable tolling? Equitable tolling is that he was he was misled by the trial court. The the how was he misled by the trial court? Well, ultimately, the trial court determined this petition was timely. There was there was the reason why I threw in the issue of the that the trial court ordered the state to to respond to the petition is because ordinarily, I mean, he would look at it and determine that this thing is untimely and probably. Wouldn't wouldn't wouldn't go through all the process of going through the merits and spend a year or whatever it was going through the merits and ultimately come in deciding the case. Did you want to address the judicial bias claim? Sure. So the judicial bias claim. First off, I think it's important to note that Mr. Peterson was not a party at that disciplinary hearing. He didn't he didn't have a chance to try to impeach the judge or to impeach Miss Miss Portner. Second of all, there is more than just simply hearsay. I acknowledge that both both Miss Portner and the trial court judge denied that they had this affair, this ongoing relationship. But in the submissions that he submitted in federal court, there is more than that. He submitted evidence through her Facebook messages that she she and the judge were very, very friendly and additional affidavits. The affidavits are hearsay. I recognize that. But I don't think that the fact that the affidavits are hearsay should should should. Should should should should should block him from making a pleading in the first place. That makes sense. He should be given an opportunity to try to prove prove this allegation through a hearing with non hearsay evidence. And I went through it in detail in the supplemental brief. But I think he can I think he has he has evidence that can show, in fact, that at the very least, Miss Portner and the trial court judge are good friends. In fact, in one of them, she refers to him and she says, Langton is my friend in one of those Facebook messages. So what's your understanding of how the district court disposed of this claim? Well, the the the district court did look at it as an actual innocence claim, and the district court said judicial bias doesn't go to actual innocence because you can obviously you can have a biased juror, but still be guilty. So that's the way that the district court misapprehended the claim. Now, maybe that might be because Mr. Peterson proceeding pro se wasn't particularly artful in the way that he raised it. But I but he did raise it and call it a judicial bias claim. And he didn't raise it as evidence that he of as factual evidence. So the district court completely misapprehended what his claim was. Did the district court say that this claim was not timely? I'm trying to recall what the what I recall the district court saying was what I just said. He just said, OK, yes, yes, I think it was untimely. And he wouldn't address it as an actual innocence claim. He viewed it to be an actual innocence claim and said it's not actual innocence because the fact the other biased judge doesn't prove your innocence. But that's the way the district court judge ruled on that. I had one more question. Counsel, so you said that the extraordinary circumstance that excuses the late filing was the ruling by the state court judge that the petition was timely. But doesn't our president require an affirmative misleading as opposed to just an erroneous ruling? Well, I think I think if you if you look at the the case, I guess that that was a ruling. The judge, the judge, the judge allowed her to file what would otherwise be an untimely petition. Well, that case happened to be in Las Vegas and there was a little more to it than that. She had an attorney who was not representing her at all. I mean, the court found that there was a complete lack of counsel. And so that was part of the extraordinary circumstances that went into the rude and equitable tolling rubric. But I mean, if we said that every time a lower court made an erroneous ruling that constituted affirmative. Affirmative, an affirmative statement, there would be equitable tolling in almost every case where a ruling was reversed. Well, I don't I don't I don't know about that, Judge. I know that in the Rudin case, they looked at kind of two different time periods because she had two different lawyers on post conviction. One that did nothing for the other one who did do something for her. But I think it sounded to me like the case was so convoluted that everybody was confused as to whether or not a post conviction. Yeah, that was an extraordinary circumstance because the proceedings were so jangled and the attorneys were less than adequate. And so that was an unusual case to rely on. But but but but ultimately, at least for part of the time that was equitably told, they did this. This court pointed to the district courts would turn out to be an erroneous decision that she should be allowed to file this state petition. So I think this court has done that in at least the Rudin case. I think you could also argue that the Sosa case did that, where the judge kept granting extensions and turned out the judge granted extensions and the statute of limitations was blown. So in that case as well, there was an erroneous ruling. I don't know if the court has any further questions. There don't appear to be any further questions. So thank you, counsel. Thank you. Thank you both, counsel. We appreciate your arguments this morning. And the matter is submitted at this time. And I believe that ends our session for today. Thank you. Thank you.
judges: Paez, Rawlinson, Antoon